UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**NANCY FISHER, MD**,

                            Plaintiff,

      v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA**,

                            Defendant.

No. CV 10-738-MO

OPINION AND ORDER

**MOSMAN, J.**,

      This case began in July 2009, when defendant Unum Life Insurance Company of America ("Unum") informed plaintiff Nancy Fisher that she was no longer eligible for disability benefits under their disability policy. After an unsuccessful appeal, Dr. Fisher filed this action in state court, asserting that Unum had wrongfully interpreted a specific provision of the policy to deny her $5,222.30 in residual disability benefits.[1] (Notice of Removal (#1) Ex. A at 9.) Unum removed to this Court, asserting diversity jurisdiction under 18 U.S.C. § 1332. Dr. Fisher moved to remand the

---

[1] The residual benefits at issue in this case are paid only when Dr. Fisher's monthly earnings are 80% or less of her pre-disability monthly earnings.

case to Clackamas County Circuit Court and argues that this court lacks jurisdiction because Unum has not established by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007). For the following reasons, I GRANT Dr. Fisher's Motion to Remand (#3).

## DISCUSSION

The parties' dispute centers primarily on whether the amount in controversy includes future disability benefits under the policy, and, if so, whether an award of future residual benefits, premium waivers, and statutory attorney fees would exceed $75,000. Although the jurisdictional amount in controversy has been litigated extensively in the context of disability insurance, the precise circumstances in which future benefits count toward the amount in controversy remain unclear. Generally, "future potential benefits may be considered in computing the requisite jurisdictional amount . . . [unless] the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the policy." *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416-17 (6th Cir. 1996); *see also Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (stating that an insurer's maximum liability under a policy "is relevant to determining the amount in controversy only if the validity of the entire insurance policy is at issue"); *Shoemaker v. Sentry Life Ins. Co.*, 484 F. Supp. 2d 1057, 1058 (D. Ariz. 2007); *Albino v. Standard Ins. Co.*, 349 F. Supp. 2d 1334, 1339 (C.D. Cal. 2004). This rule appears to be derived from contract law, which does not recognize a claim for anticipatory breach in the context of unilateral insurance contracts. *See Beamon v. Pac. Mut. Life Ins. Co.*, 369 F.2d 653, 655-56 (4th Cir. 1966); *see also New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 677 (1936) (Cardozo, J.) (holding that an insurance company's determination that an insured was no longer disabled and therefore no

longer entitled to benefits "was neither a repudiation of the policy nor such a breach of its provisions as to make conditional and future benefits the measure of recovery" because the insurance company did not repudiate the contractual provisions but "appealed to their authority and endeavored to apply them"); *Lane v. Bhd. of Locomotive Enginemen & Firemen*, 157 Or. 667, 690-91 (1937) (holding that, when an insurer repudiates its obligation to make monthly payments under an insurance policy, "the insured may not treat the entire contract as breached and sue for gross damages based on alleged expectancy of life").

This jurisdictional principle is somewhat of a legal fiction, in that Dr. Fisher's claim clearly implicates Unum's obligation to pay future benefits. *See Shoemaker*, 484 F. Supp. 2d at 1058 ("It may be counterintuitive that a declaratory action about quantifiable benefits accruing entirely in the future has no amount in controversy, but it is an arcanum of federal jurisdiction that that is the case."). But the parties agree that Unum has not repudiated the contract in its entirety; rather, Unum believes that it has applied the contract by its terms. Unum has paid residual benefits under the contract for several years and disputes only the conditions under which its obligations end. As the Supreme Court has stated, "A loose practice has been growing up whereby the breach on such occasions is spoken of as anticipatory, whereas in truth it is strictly present, though with consequences effective upon performance in the future." *Viglas*, 297 U.S. at 682. Under the legal principles discussed above, Dr. Fisher's benefits are not "amounts in controversy" until she can allege that an accrued benefit has been wrongfully withheld.

This decision is reinforced by the nature of the residual disability benefits at issue in this case, which are contingent on future unknown variables. A judgment favorable to Dr. Fisher would not necessarily entitle her to future disability benefits; it would only make her eligible to receive

future residual benefits under the other eligibility requirements of the policy. Specifically, Dr. Fisher would only be eligible for residual disability if her disability prevented her from working full-time and her monthly Loss of Earnings Ratio was 20% or more. The contingent nature of her entitlement to future benefits creates doubt regarding whether the amount in controversy will ever be satisfied, and a federal court should reject jurisdiction if there is any doubt that removal is proper. *See Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also Commercial Cas. Ins. Co. v. Fowles*, 154 F.2d 884, 886 (9th Cir. 1946) ("[N]o right to such 'future benefits' existed at the time the action was commenced. No one, at that time, knew or could have known whether such a right would ever exist. Therefore, as to such 'future benefits,' there was and could have been, at that time, no controversy."). Based on the uncertain nature of her entitlement to future benefits and the fact that the validity of the insurance policy itself is not disputed, Dr. Fisher's future benefits are not fairly characterized as amounts in controversy for purposes of establishing federal jurisdiction.

Even assuming that future benefits may be included in the amount in controversy under these circumstances, however, Unum has failed to meet its burden to show that an award of past and future benefits will likely exceed $75,000. Unum asserts, without evidentiary support, that a judgment in Dr. Fisher's favor would entitle her to monthly benefits totaling over $63,000, exclusive of premium waivers and attorney fees. Unum bases this estimate on its prediction that the terms of the policy would require Unum to pay Dr. Fisher $747.99 each month from May 1, 2009, until June 1, 2016. (Def.'s Opp'n to Mot. to Remand (#5) 6 (citing Notice of Removal (#1) ¶ 7).) Unum estimates this monthly average by dividing its total payments under the policy to date ($40,391.49) by the 54 months that elapsed between November 1, 2004, when Dr. Fisher first claimed coverage, and May 1, 2009, when Unum closed her claim.

Dr. Fisher's estimate of past and future benefits is based on the benefits she received during the most recent 28-month period between January 2007 and April 2009, and amounts to less than half of Unum's estimate. I find Dr. Fisher's prediction of future benefits is more plausible than that of defendants. The basis for Dr. Fisher's disability insurance claim is an eye infection she contracted on or about October 1, 2004. Immediately following her infection, Dr. Fisher received residual benefits for 23 of the 27 months between October 2004 and December 2006, resulting in a total of payment of $29,582.68 and an average monthly payment of $1095.65. (Madigan Decl. (#8) Ex. D at 1.) In contrast, Dr. Fisher's condition appears to have improved between January 2007 and April 2009, when she received residual benefits for only 11 of 28 months, resulting in a total payment of $9167.69 and an average monthly payment of $327.41. (Madigan Decl. (#8) Ex. A at 4.) (Madigan Decl. (#8) Ex. A at 4.) The average monthly payment of $327.41 could be extrapolated to roughly $28,000 worth of benefits that will be claimed between May 1, 2009, and June 1, 2016.

Because Dr. Fisher's well-supported prediction falls far below the $75,000 threshold, defendants have failed to meet their burden to show that the amount in controversy will likely exceed $75,000, even accounting for the possibility of an estimated $10,000 in premium waivers and a statutory attorney fee award. At the $120-150 per hour that Dr. Fisher's attorneys claim as an hourly rate, counsel would have to work over two hundred hours on a narrow issue of insurance contract interpretation before their fees would implicate the amount in controversy.

I place little weight on Dr. Fisher's refusal to stipulate that she will not seek any future benefits over $75,000. Dr. Fisher's counsel stated that it could not stipulate to a limitation on future benefits because he didn't know what those future earnings would be. (Patton Decl. (#6) Ex. A at 1.) As discussed above, the earnings-dependent nature of Dr. Fisher's residual benefits make future

benefit calculations uncertain. Moreover, Dr. Fisher's counsel expressed a legitimate concern that the language of Unum's proposed stipulation would have undermined Dr. Fisher's ability to seek total disability benefits under the policy if her condition worsened. Given these legitimate reasons, counsel's refusal to stipulate is distinguishable from *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) and *Hendrickson v. Xerox Corp.*, 751 F. Supp. 175, 176 (D. Or. 1990), in which plaintiffs' counsel not only refused to stipulate to a $75,000 cap on damages but affirmatively stated that total damages would likely exceed the amount in controversy. Through their refusal to stipulate, Dr. Fisher's attorneys have acknowledged only the *possibility* that Dr. Fisher's future benefits could exceed $75,000; it is defendant's burden to prove that future benefits are *likely* to exceed $75,000.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (#3) is GRANTED, and this case will be remanded to Clackamas County Circuit Court.

IT IS SO ORDERED.

DATED this   28th   day of September, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court